IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| SHARON MELISSA VIA, individually and as mother and next friend of Aiken Hamlett, a minor, | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| VS. | ) | Case No.: CV- 2 : 06cv531 - 1D |
|  | ) |  |
| ALLSTATE INDEMNITY COMPANY, SHELLEY OERTEL, DAVID OLETSKI, fictitious defendants A, B, C, D, and E, being those persons, companies, partnerships, or other entities who caused or contributed to cause the injuries and damages alleged herein through their negligent and/or intentional conduct and/or who are the successors in interest to any of named Defendants and/or who had supervisory control or the duty to supervise any of the named Defendants and F, G, H, I and J, said fictitious defendants being those corporations, partnerships, other business entities or other individuals who conspired with the named Defendants to further the conduct described in the complaint and/or who acted either independently or participated with others to commit the wrongful conduct complained of herein, whose name or names are  unknown to the Plaintiff at this time but which will be substituted by amendment when ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## NOTICE OF REMOVAL

COMES NOW the Defendant, ALLSTATE INDEMNITY COMPANY, a Corporation, and

files this  Notice of Removal of this action from the Circuit Court of Montgomery County, Alabama,

to the United States District Court for the Middle District of Alabama, Northern Division. As grounds hereto, this Defendant shows unto the Court as follows:

## BACKGROUND OF THIS ACTION

1.      The above-entitled cause has been brought in the Circuit Court for Montgomery County, Alabama, by service of the Summons and Complaint via certified mail on or about <u>May 16, 2006,</u> and is now pending therein. A complete copy of the lawsuit along with all State Court pleadings are attached as Exhibit "A" and are incorporated herein by reference. This case is being removed within 30 days of receipt of a pleading which indicates the case is removable and well within one year of the commencement of this action.

2.      Said action is of a civil nature at law whereby Plaintiff seeks to recover damages in excess of $75,000 from the Defendants, exclusive of interest and costs. Should Plaintiff stipulate that she will never seek or attempt to recover from Allstate Indemnity Company monetary damages in this case in excess of SEVENTY-FIVE THOUSAND and NO/100 ($75,000.00) exclusive of interest and costs or retain any judgment in excess of SEVENTY-FIVE THOUSAND and NO/100 ($75,000.00), this Defendant will agree to the remand of this litigation.

## THE PLAINTIFF

3.      Upon information and belief, and as pled in the Plaintiff's Complaint, the Plaintiff is a citizen of Montgomery County, Alabama.

## THE REMOVING DEFENDANT

4.      At all times referred to in the Complaint including the date of filing of the Complaint, the Defendant, Allstate Indemnity Company, was a foreign corporation organized and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois.

- 2 -

## GROUNDS FOR REMOVAL

5.    This case is being removed pursuant to 28 U.S.C. §1441 et seq., inasmuch as this action could have originally been brought in this Court pursuant to 28 U.S.C. §1332.

6.    This Notice of Removal is also timely filed because it is being submitted within one year from the May 16, 2006, date of commencement of the action.

7.    A true and correct copy of this Notice of Removal is being served on counsel for Plaintiff this date.

8.    A true and correct copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Montgomery County, Alabama this date.

9.    No special bail was or is required in this action.

## JURISDICTION UNDER 28 U.S.C. §1332

10.    This action could have originally been brought in this Court pursuant to 28 U.S.C. §1332 in that it is a civil action wherein the matter in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship among the parties Plaintiff and Defendants. (See discussion of fraudulent joinder, infra).  As has often been the case in claims filed against insurers, Plaintiff's choice to file suit against Allstate was accompanied by the inclusion of two Defendants who have no role or responsibility whatsoever concerning the issues raised in the Complaint.  As the Eleventh Circuit has recently pointed out, the consideration of fraudulent joinder must necessarily include the affidavits of one who has been fraudulently joined.   Congress established the removal process to protect defendants.  Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." Legg v. Wyeth, 428 F.3d 1317, 1325 (11th Cir. 2005) *citing* McKinney v. Bd. of Trustees of Mayland Cmty. Coll., 955

F.2d 924, 928 (4th Cir. 1992).

11.    Plaintiff's suit arises from a storm, which allegedly produced damage to Plaintiff's home. With regard to the amount in controversy, Plaintiff's Complaint specifically alleges breach of contract, "bad faith" failure to pay, fraudulent suppression, breach of fiduciary duty, fraudulent failure to pay claim, conspiracy, unjust enrichment, negligently and/or wanton hiring, training, and/or supervision, bad faith refusal to investigate a claim, negligence and/or wantonness and demands compensatory and punitive damages. (See Plaintiff's Complaint, Count I-X). Plaintiffs were insured under a policy of insurance which provided coverage limits in excess of $75,000.00. Alabama Courts have routinely affirmed verdicts in excess of $75,000.00 based upon allegations of bad faith. See also, Standard Plan, Inc. v. Tucker, 582 So. 2d 1024 (Ala. 1991) (affirming $500,000 verdict for punitive damages in a "bad faith" action); Aetna Life Ins. Co. v. Lavoie, 505 So. 2d 1050 (Ala. 1987) (ordering remittitur of $3,500,000 verdict to $3,000,000); United Ins. Co. of America v. Cope, 630 So. 2d 407 (Ala. 1993) (reversing and remanding jury verdict for $1,000,000 in compensatory damages and $3,000,000 in punitive damages in "bad faith" action). Based on the coverage at issue, the claims alleged and the history of verdicts established on "bad faith" in Alabama, Plaintiffs' claims call into controversy amounts in excess of $75,000 exclusive of interest and costs.

12.    There is complete diversity of citizenship between the Plaintiffs and Defendant Allstate, excluding fraudulently joined Defendant, .

## THE FRAUDULENTLY JOINED DEFENDANTS

13.    At all times referred to in the Complaint of the Plaintiff and at the present time, Defendant, Shelley Oertel is and was a citizen of the State of Alabama and Defendant, David Oletski is and was a citizen of Illinois. For the purposes of this Notice of Removal, these

- 4 -

Defendants are to be ignored as they have been fraudulently joined. Defendants Oertel and Oletski are employees of an adjusting firm, Pilot Catastrophe, Inc. Allstate requested the assistance of Pilot Catastrophe, Inc. to assist in gathering information on this loss. Pilot then assigned its employees, Ms. Oertel and Mr. Oletski on two separate occasions to inspect the home. Thus, neither Oertel or Oletski are employees of Allstate. Based on their sworn affidavits and simple logic, neither of these Defendants had any role whatsoever in decisions by Allstate concerning the process applied at Allstate to adjust claims

14. Within her complaint, Plaintiff asserts seven (7) claims against Defendants Oertel and Oletski, specifically:

- Plaintiff claims **fraudulent suppression** alleging that Defendants Oertel and Oletski "had an affirmative duty to inform the Plaintiff of [Allstate's employment] of the consulting firm McKinsey & Company, the creation and results from CCPR, the involvement of Tech-Cor in the claims handling process, ... [and] that [Allstate] employed the use of McKinsey's Zero Sum Game." (See Plaintiff's Complaint, Count Three).

- Next, the Plaintiff's alleges that Defendants Oertel and Oletski **breached their fiduciary duty** to the Plaintiff by failing to inform her at the time of the purchase of the policy:

  (1) "That Allstate engaged in the practice of employing a consulting firm [McKinsey & Company];

  (2) "Of Allstate's use of the CCPR Program, the Zero Sum Game and the 'Boxing Gloves' treatment",

AND

(3)     "That Allstate was using the judicial process to force the acceptance of lower claim payouts to policyholders [by] using its superior financial position to foster aggressive litigation practices against all policyholders and claimants." (See Plaintiff's Complaint, Count Four).

- Plaintiff's third  claim against Defendants Oertel and Oletski alleges the **fraudulent failure to pay the claim** by "suppressing with the express intent to deceive" Allstate's use of "CCPR, the use of the McKinsey and Company consulting firm, the employment of Tech-Cor, and the 'Boxing Gloves' treatment of first-party claimants." (See Plaintiff's Complaint, Count Five).

- Plaintiff alleges **conspiracy** against Defendant Oertel and Oletski asserting that they "conspired to create and implement the CCPR process and to conceal this material information from the public and its policyholders, as well as various state insurance commissioners."  Additionally, Plaintiff asserts that Defendants Oertel and Oletski conspired with Allstate "to improperly deny the Plaintiff's just claim for their own benefit, because incentives and rewards were offered to the Defendants Oertel and Oletski for the improper denial of the Plaintiff's claim." (See Plaintiff's Complaint, Count Six).

- Plaintiff alleges that Defendants Oertel and Oletski "were  **unjustly enriched** because of the rewards that were given to them for the improper denial of the Plaintiff's just claim" resulting in injuries to the Plaintiff. (See Plaintiff's Complaint, Count Seven).

■    Plaintiff asserts a claim of **bad faith refusal to investigate a claim** alleging that

Defendants Oertel and Oletski "failed or refused to adequately investigate

Plaintiff's just claim" and "as a result of [Defendants Oertel's and Oletski's] bad

faith failure to investigate, the Plaintiff was injured." (See Plaintiff's Complaint,

Count Nine).

■    Plaintiff's final claim against Defendants Oertel and Oletski of **negligence and/or**

**wantonness** alleges "[Oertel and Oletski] negligently and/or wantonly failed to

properly adjust Plaintiff's claim and undervalued and/or under paid her claim"

resulting in injuries and damages to the Plaintiff. (See Plaintiff's Complaint,

Count Ten).

15.    The citizenship of Shelley Oertel and David Oletski is to be disregarded as they

have been fraudulently joined in this action. Such fraudulent joinder is evidenced

by the following:

(a)    **Fraudulent Suppression**:

Under Alabama law, "to establish a claim of fraudulent suppression, a Plaintiff
must produce substantial evidence establishing the following elements: (1) that
the Defendant had a duty to disclose an existing material fact; (2) that the
Defendant suppressed that existing material fact; (3) that the Defendant had actual
knowledge of the fact; (4) that the Defendant's suppression of the fact induced the
Plaintiff to act or to refrain from acting; and (5) that the Plaintiff suffered actual
damage as a proximate result. State Farm Fire & Cas. Co. v. Slade, 747 So.2d
293, 323-324 (Ala. 1999).; Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d
1288, 1293 (Ala. 1993). In the present case, Defendants Oertel and Oletski were
unaware of any information concerning Allstate's relationship with McKinsey &
Company. (Oertel and Oletski Affidavits, Exhibit ). Additionally, Oertel and
Oletski were never involved, trained, provided with any documents or had any
personal knowledge regarding any claim handling process known as Core Claims
Process Redesign "CCPR," "Tech-Cor," or any gaming strategy known as a Zero
Sum Game Theory in regards to the adjustment of losses. (Oertel and Oletskis

Affidavits, Exhibit ).  Therefore, based on Alabama law, because Defendants Oertel and Oletski were never aware of the aforementioned facts, the Plaintiff's claim of fraudulent suppression cannot be supported.  This conclusion is not surprising given that Oertel and Oletski are <u>not</u> an employees of Allstate but instead employees of a totally separate adjusting company.  Their lack of knowledge about the conduct of Allstate and the development of Allstate adjusting is completely logical.  As their affidavits establish, they was not trained or educated by Allstate on any of the issues Plaintiff has raised.

(b)    **Breach of Fiduciary Duty:**
There is no indication under Alabama law that an employee of an insurance company, much less an employee of an adjusting firm employed by an insurance company, is in a fiduciary relationship with the insurer's policy holder.  Even assuming, arguendo, that such a burden were placed on Defendants Oertel and Oletski, the affidavits before the Court establish that Oertel and Oletski had no information which Plaintiff alleges should be passed on to the policy holder.  Thus, assuming that Oertel or Oletski held a personal fiduciary duty to Plaintiff, there could be no failure on his part where he did not possess the knowledge which is claimed to have been withheld.

(c)    **Fraudulent Failure to Pay Claim:**

Plaintiff alleges a claim for fraudulent failure to pay generally against "The Defendants," however she does not address a specific claim against Defendant Oertel or Defendant Oletski.  This claim appears to simply restate the general fraud theory alleged in Count Three of Plaintiff's Complaint which has been addressed specifically in 15 (a) of this Notice of Removal.  Moreover, in their affidavits, Defendants Oertel and Oletski offer sworn testimony that neither were responsible for the decision to accept or deny Plaintiff's claim with Allstate. (Oertel and Oletski Affidavits, Exhibit).

(d)    **Conspiracy:**

In <u>McLemore v. Ford Motor Co.</u>, 628 So.2d 548, 550 (Ala. 1993), the Alabama Supreme Court held that a civil conspiracy required a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means.  In addition to a meeting of the minds between the conspirators, the Plaintiff is further required to prove that the Defendants intended to bring about the object of the claimed conspiracy.  <u>First Bank of Childersburg v. Florey</u>, 676 So.2d 324, 327 (Ala.Civ.App.1996).  In their affidavits, Defendants Oertel and Oletski offer sworn testimony that neither were ever involved, had any personal knowledge or participated in any role whatsoever in the creation or

implementation of the CCPR process. (Oertel and Oletski Affidavits, Exhibit ).
As previously noted, their affidavits clearly state that neither were responsible for
the decision to accept or deny Plaintiff's claim. (Oertel and Oletski Affidavits,
Exhibit ). Additionally, Oertel and Oletski offer testimony that neither were
aware of any practice where Allstate tied compensation for adjusters to the
amount of money paid out in claims and neither Oertel or Oletski have ever
received compensation based on the amount of money paid out on a claim.
(Oertel and Oletski Affidavits, Exhibit ). Therefore, because Defendants Oertel
and Oletski did not possess the requisite knowledge of the conspiracy claimed in
Plaintiff's Complaint, there could be no meeting of the minds or any intent to
bring about such a conspiracy.

(e)     **Unjust Enrichment:**

The law in Alabama regarding unjust enrichment is unambiguous. "One is
unjustly enriched if his retention of a benefit would be unjust." Welch v.
Montgomery Eye Physicians, P.C., 891 So.2d 837, 843 (Ala. 2004), *citing* Jordan
v. Mitchell, 705 So.2d 453, 458. (Ala.Civ.App.1997). The Jordan court
continued:

> Retention of a benefit is unjust if (1) the donor of the benefit acted
> under a mistake of fact or in misreliance on a right or duty, or (2)
> the recipient of the benefit engaged in some unconscionable
> conduct, such as fraud, coercion, or abuse of a confidential
> relationship. In the absence of mistake or misreliance by the donor
> or wrongful conduct by the recipient, the recipient may have been
> enriched, but he is not deemed to have been *unjustly* enriched. *Id.*
> at 458

The affidavits of Oertel and Oletski establish that neither were unjustly enriched
in the course of his employment for Pilot Catastrophe Inc. Oertel and Oletski
have offered his sworn testimony by affidavit that there was no compensation paid
to them through Pilot, Allstate or anyone else in exchange for or as a direct result
of a decision to deny Plaintiff's claim. As noted above, the sworn testimony by
Oertel and Oletski indicates that they played no role in the matters alleged and
were not employees of Allstate. Therefore, it would be impossible for Oertel or
Oletski to of engaged in unconscionable conduct, fraud, coercion, or abuse of a
confidential relationship where they had no knowledge of the matters raised by the
Plaintiff.

(f)     **Bad Faith Refusal to Investigate:**

Under Alabama law, an insurer has an obligation to perform "the duty of good

- 9 -

faith and fair dealing implied in law." Koch v. State Farm Fire & Casualty Co., 565 So. 2d 226, 229 (Ala. 1990). A breach of this duty creates a cause of action only against the insurance carrier for "bad faith failure to investigate." It has been established that there is no claim for "bad faith" against the individual employee of the insurer. Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337, 343 (Ala. 1993); Ligon Furniture Co. v. O.M.Hughes Ins., Inc., 551 So. 2d 283, 285 (Ala. 1989). Clearly, Plaintiffs' assertions of liability against Oertel and Oletski fail to set forth a cause of action under Alabama law.

(g)    **Negligence and/or Wantonness**

In Kervin v. Southern Guaranty Insurance Co., 667 So. 2d. 704, 706 (Ala. 1995), the Alabama Supreme Court affirmed the Trial Court's entry of Summary Judgment for the insurer holding **"This Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims. (Emphasis Added).** Citing Pate v. Rollison Logging Equipment, 628 So. 2d 337 (Ala. 1993); Armstrong v. Life Insurance Company of Virginia, 454 So. 2d 1377, 1380 (Ala. 1984) (overruled on other grounds); Hickox v. Stover, 551 So. 2d 259, 264 (Ala. 1989); Chavers v. National Security Fire and Casulty Co., 405 So. 2d 1 (Ala. 1981); Calvert Fire Insurance Co. v. Green, 180 So. 2d. 269 (Ala. 1965). Because the Alabama Supreme Court has consistently refused to recognize any cause of action for negligent and/or wanton adjustment of an insurance claim, any such claims against Oertel or Oletski are due to fail since they do not state a viable cause of action under the Alabama substantive law.

16.    Additionally, this Defendant would like to make note of this Court's May 17, 2006 Order in Moses v. Allstate Indemnity Co., 2006 WL 1361131. (Exhibit ). Coincidently, identical claims with the addition of negligence and/or wantonness to properly adjust the Plaintiff's insurance claim was filed by this same attorney in the aforementioned case.

17.    Based on the above facts and allegations, as well as the attached affidavits, the addition of Shelley Oertel and David Oletski as Defendants constitute fraudulent joinder. As this Court is well aware, fraudulent joinder exists when there is no possibility that the Plaintiff would be able to establish a cause of action against the resident Defendant or there has been an outright fraud in the Plaintiff's pleading of jurisdictional facts. Cabalceta v. Standard Fruit Co., 883 F. 2d

- 10 -

aff'd., 29 F. 3d 641 (11th Cir. 1994); Autrey v. United Companies Lending Corp., 872 F. Supp. 925 (S.D.Ala. 1995). "The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005) *quoting* Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The causes of action and facts before the Court establish the Plaintiff's fraudulent joinder of Shelley Oertel and David Oletski. Therefore, their presence in this action is to be disregarded in determining the existence of diversity.  See Mask v. Chrysler, 825 F. Supp. 285 (N.D.Ala. 1993).

18.    All Defendants join in and consent to this removal.

19.    This suit is removed to this Court, under and by virtue of the Acts of Congress of the United States, and the Defendants are desirous of removing said cause to this Court.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the above-entitled cause be removed to the United States District Court for the Middle District of Alabama, Northern Division, according to the statutes in such case made and provided.

DONE this the _____ day of June, 2006.

Respectfully submitted,

M. Keith Gann
Gordon J. Brady, III
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South
Birmingham, Alabama 35223
205-251-1193
205-251-1256
mkg@hfsllp.com
gjb@hfsllp.com

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed by United States Postal Service the foregoing document to the following:

JINKS, DANIEL & CROW, P.C.
Post Office Box 350
Union Springs, AL 36089
(334) 738-4225

FRANK M. WILSON, ESQ.
504 South Perry Street
Montgomery, AL 36104
(334) 263-2560

M. Keith Gann
Gordon J. Brady, III
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South
Birmingham, Alabama 35223
205-251-1193
205-251-1256
dm@hfsllp.com
mkg@hfsllp.com
gjb@hfsllp.com